MISSOURI, K. & T. RY. CO. OF TEXAS v. CORNELIUS. (No. 1628.)*

(Court of Civil Appeals of Texas. Texarkana. June 1, 1916. Rehearing Denied June 15, 1916.)

1. CONTINUANCE ⟺34—ABSENCE OF WITNESS—ADMISSION THAT ABSENT WITNESS WILL TESTIFY AS ALLEGED.

The mere admission that an absent witness would, if present, testify to the facts set out in an application for a continuance is no sufficient reason for refusing a continuance.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 114; Dec. Dig. ⟺34.]

2. CONTINUANCE ⟺25—ABSENCE OF WITNESS—MATERIALITY OF TESTIMONY.

The refusal of a continuance to secure the attendance of absent witness who would testify that plaintiff's condition was due to injury received prior to entering defendant's employ held not error, where on the trial defendant's witnesses testified that plaintiff was suffering from no injury, and that at the time he entered de-

fendant's employ a thorough physical examination disclosed no injury.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 73; Dec. Dig. ⟺25.]

3. APPEAL AND ERROR ⟺1043(7)—HARMLESS ERROR—REFUSAL OF CONTINUANCE.

Defendant cannot complain of error in refusing a continuance to take the deposition of an absent physician, where with the consent of plaintiff such physician's written certificate was used before the jury; the only substantial difference between that and a deposition being that the former was not under oath.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4121; Dec. Dig. ⟺1043(7).]

4. APPEAL AND ERROR ⟺1058(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE COVERED BY OTHER TESTIMONY.

Refusal to permit defendant's physician to state "whether in his opinion the complaints of pain made by plaintiff during a physical examination were real, or whether he was suffering from pain or just complaining," held not prejudicial error, where other testimony of such physician fully answered the question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201; Dec. Dig. ⟺1058(2).]

5. NEW TRIAL ⟺44(3) — MISCONDUCT OF JURY—DISCUSSING IMPROPER ISSUES — EVIDENCE—SUFFICIENCY.

Evidence of misconduct of jury in discussing improper issues during consideration of case held not sufficient to require the verdict to be set aside and a new trial granted.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 82–84; Dec. Dig. ⟺44(3).]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by John Cornelius against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff and an order denying a new trial, the defendant appeals. Affirmed.

Chas. C. Huff, of Dallas, and Dinsmore, McMahan & Dinsmore, of Greenville, for appellant. Evans & Shields, of Greenville, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for $11,000 as damages for personal injuries. In his petition it was alleged that appellee had been employed by the appellant as a fireman, but was later, and at the time of the injury, performing the duties of an engine watchman at McKinney, Tex.; that the locomotive he was watching ran between McKinney and Greenville, and was laid over at night at the former place; that his duties required him to remain in and on and about the engine through the night, for the purpose of watching it, and also to go upon the tender and shovel coal to the front, and to build a fire and have steam up in the morning; that there was situated on the engine, on the left-hand corner of the tender, a water cooler, setting on a wooden box; that during the night, and while in the performance of his duties, appellee was passing from the tender to the engine cab, and placed his hand on the water

box to steady himself, when the water box, being unfastened, "toppled and caused the plaintiff to fall to the ground"; that the fall resulted in—

"bruising and lacerating the muscles, nerves, ligaments of the lumbar, sacral, and dorsal region of the back, and bruising and lacerating the cartilage along and between the bones of the spinal column, and injuring and bruising and contusing the covering and the substance of the spinal cord and the nerves that lead off therefrom."

The negligence alleged was the failure to have the water cooler securely fastened. The appellant filed its answer at a time when the act of March 3, 1913, was in force, and replied specifically to each allegation in the petition, and by other special pleas. The appellant admitted that the appellee at the time alleged was in its employ as alleged; admitted that the location of the water cooler and box was as stated, but alleged that it was placed there by the enginemen for their convenience, and not by defendant; that the box was fastened by a wire passing around it which held it firmly in position. It averred that if the plaintiff was injured as alleged it was the result of his own negligence. It denied specifically all the allegations of injury, averring that the plaintiff was an able-bodied man and then in good condition. A trial before a jury resulted in the verdict above mentioned.

At the first term of the court after the suit was filed the appellant applied for a continuance, for the purpose of procuring the testimony of Dr. W. N. Lemmon, whose residence, it was alleged, was in Manilla, Philippine Islands. According to the averments of the application, the appellant desired to take the deposition of this witness and by him prove the following facts:

"That he examined the plaintiff, John Cornelius, under the name of J. E. Cornelius, on the 22d day of November, 1907, and that at that time he found a rigidity of the left lumbar muscles, intensely tender or painful; pain also over corresponding vertebræ; these conditions being produced by a rupture of the erector spinal muscle. The right side of corresponding area on opposite side of spine was flaccid. Analysis showed specific gravity 1,020; alkaline reaction; no sugar; no albumen; that 12 or 15 days after this first examination, on examining the urine, he found specific gravity 1,030, sugar 2 per cent., or 2 grains to each ounce of urine, which condition persisted after the said witness made the third examination. That the condition of the plaintiff's spine was such at that time that in the said witness' judgment it would affect the plaintiff's back as long as he lived, and that it was the opinion at that time that the diabetic condition the plaintiff was then in would eventually cause his death if all worry was not eradicated, and his diet did not clear the sugar from his urine, which in the witness' judgment, was exceedingly doubtful."

A written certificate, signed by Dr. Lemmon, and which furnished the basis of the application, was appended as an exhibit to the motion for a continuance. The action of the court in overruling this motion is the first assigned error. The bill of exceptions reserved contains the following recital as to the conditions under which this ruling was made:

"After the application for continuance and the contest thereof were presented and read to the court, plaintiff's counsel announced in open court that the plaintiff would, in avoidance of the application for a continuance, admit that Dr. Lemmon would, if his testimony should be taken, testify that he examined the plaintiff in 1907, as is set out in the copy of a statement by Dr. W. N. Lemmon dated December 18, 1907, and attached to the application for a continuance, and that it was true that this statement was the opinion of Dr. Lemmon; that it was true that he gave it as his honest opinion of the man's condition on the 18th day of December, 1907, and that he would so testify. Whereupon the court asked plaintiff's attorneys if they would permit defendant to read to the jury the copy of the statement of Dr. Lemmon attached to the application for a continuance; that the plaintiff's attorneys announced that they would consent that the defendant might so use the copy, whereupon the court stated that, in view of plaintiff's admission and agreement, he would overrule the motion for the application for a continuance."

It appears from the statement of facts before us that the appellant afterwards did introduce in evidence the written statement referred to. Appellant contends, however, that the admissions made by the appellee and the use of this statement did not supply the full value of the evidence it expected to secure from the deposition of Dr. Lemmon, and therefore the refusal of the court to grant the continuance applied for was reversible error.

[1] It is well settled that merely admitting that an absent witness would, if present, testify to the facts set out in an application for a continuance does not furnish a legal reason for refusing to grant the continuance. If the testimony in such instances is material, the party desiring to use the witness has the right to all the benefit that may result from the presence of the witness in testifying under oath before the jury. This is based upon the common experience which teaches that testimony given orally in the presence of a court or jury is often far more impressive than the same facts presented in the usual manner by an agreement reduced to writing or formally stated by the attorneys.

[2] But the first question, and the one which seems to be decisive in this instance, is this: Was the testimony material, and is it probable that it would have led to the rendition of a different verdict had it been introduced in the form desired by the appellant? It is evident that the only purpose of this testimony was to prove that the appellee was injured in his back in 1907, about eight years prior to the time he now claims to have been injured, and that this old injury was that from which he was suffering at the time of the trial. In other words, the testimony of Dr. Lemmon was to be used to disprove the existence of the injury sued for. During the progress of the trial the appellee was examined in the presence of the jury by

two physicians selected by the appellant. Both of these thereafter testified that they found no evidence of any injury whatever, and their testimony clearly indicated that the appellee was then feigning injury. Two other physicians, called by the appellee, testified that he was injured. These physicians stated that in examinations made previous to the trial they found discoloration on the small of the back, in the lumbar region, where the appellee complained he felt pain. They also testified that his accelerated pulse rate under pressure indicated that the pain was real and not feigned. There was other testimony introduced by the appellant which tended to corroborate its experts above referred to. In other portions of the appellant's brief it now insists that the verdict rendered was unsupported by the evidence, one reason being that the great weight of the evidence shows that the appellee was not suffering from any injury at the time of the trial. It is made clear that, according to appellant's contention, the appellee was suffering from no injury, and even the conditions about which Dr. Lemmon would testify had entirely disappeared at the time of the trial. The appellee testified that when he applied for work under the appellant, Dr. Cantrell, appellant's examining physician, gave him a thorough examination, and found no objection to his physical condition. Dr. Cantrell also testified upon the trial, and did not deny that statement. The issue seemed to be, was the appellee at the time of trial suffering from any injury at all? not whether the injury of which he complained was an old one or new. In view of the facts upon which the verdict must rest, we are of the opinion that the testimony of Dr. Lemmon, had it been admitted, would not have changed the result of the trial.

[3] But even if it were otherwise, the appellant is not now in an attitude to complain of the failure to secure Dr. Lemmon's deposition. Upon the trial it used the written statement theretofore made by Dr. Lemmon, and thus got before the jury the very facts which it expected to prove by taking his deposition. The only substantial difference between this statement and the deposition it expected to secure was that the statement was not sworn to, and the deposition would have been. It is not likely that a jury would have attached such importance to the formalities of an oath and would have given the deposition more credence than it did the certificate admitted upon the trial. There was no reversible error in overruling the application for a continuance.

[4] Dr. Cantrell was one of the physicians selected by the appellant to examine the appellee in the presence of the jury. During the course of his examination he testified as follows:

"I do not find a single objective symptom that shows he has been injured in his back. I took his pulse rate after I made the examination; it was about 85. From the examination I have made of this man I do not think he is now suffering from any injury in his back; that is my judgment. If the examination had caused him pain to any marked degree, I think his pulse rate would have been higher than what I found it to be. I did not find any evidence of pain in the pulse rate; it was not present. If there had been pain, I would have found a rigidity of the muscles; that is, when I pressed his back, if it had produced pain, the muscles would have contracted; the muscles would have guarded against the pain, like anything else in the body contracting to protect the parts. If a man is injured in the back such as will produce pain under pressure, it is a very marked symptom that the pressure will increase the pulse rate. If you make pressure over the point of location of the pain, if the injury is real, it will increase the pulse rate."

Counsel for the appellant asked the witness to—

"state whether or not in his opinion the complaints of pain made by the appellee during the examination were real, or whether he was suffering from pain, or just complaining."

Upon objection the court refused to permit the witness to answer the question, and that ruling is the basis of another assignment of error. The manifest purpose of securing the opinion of the witness in this instance was to inform the jury that the appellee was not in fact suffering any pain at the time the examination was made. The witness had already made that as clear to the jury as was necessary under the circumstances. Giving his opinion would have been but a substantial reiteration of what he had already stated. If the appellee complained at a time when he was suffering no pain, the inference that he was feigning is irresistible. The ruling of the court is not therefore such error as would require a reversal of the case.

[5] It is also insisted that the court should have granted a new trial because of the misconduct of the jury in discussing improper issues during the consideration of the case. The court made what appears to us a thorough inquiry into this alleged misconduct, and the evidence adduced justified the conclusion that there was not such misconduct as required him to set aside the verdict.

There are other assignments of error, all of which have been fully considered, but it is not necessary to notice them in detail.

The judgment of the district court is affirmed.